UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO.: 2:20-CV-14323

**GINGER FEATHERSTONE,**

    Plaintiff,

vs.

**FLOOR AND DECOR OUTLETS OF
AMERICA, INC. d/b/a FLOOR & DECOR,
and ORLANDO ADAMES,**

    Defendant.
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR REMAND**

    The Defendants, FLOOR AND DECOR OUTLETS OF AMERICA and ORLANDO ADAMES, by and through the undersigned counsel, and pursuant to Local Rule 7.1(c), hereby serves this Response to Plaintiff's Motion for Remand, and in support thereof states as follows:

    1.    On June 9, 2020, the Plaintiff, GINGER FEATHERSTONE, filed a trip and fall negligence action in the Circuit Court of the Nineteenth Judicial Circuit, based upon an incident allegedly occurring on or about May 22, 2020, at the Defendant's Floor & Decor retail store in Port Saint Lucie, Florida 34953. [See D.E. 1-1]. The Plaintiff, GINGER FEATHERSTONE, claims that she tripped and fell over a tile display in the subject store. [D.E. 1-1 at ¶7].

    2.    Plaintiff has since sought to remand this action to State Court, arguing two grounds for removal: First, that Defendant failed to remove within the 30-day deadline required by Rule 6 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1446. Second, that Defendant, ORLANDO ADAMES, the store's general manager who was not present at the time of Plaintiff's fall, is a properly joined Defendant and, as such, no diversity has been shown.

3. Both of these grounds for remand must fail, as removal was properly made within 30 days of receipt of those "other papers" demonstrating grounds for removal, and ORLANDO ADAMES was a fraudulently joined Defendant. As such, Plaintiff's Motion for Remand should be denied.

I. **Defendant Removed this Case Timely Due to Plaintiff's Delayed and Staggered Service of Discovery**

4. This case has proceeded in a somewhat atypical fashion from a litigation procedure standpoint. Suit was filed only 18 days after Plaintiff's trip-and-fall, at a time when her medical injuries, treatment, and eventual recovery had not remotely been solidified. No pre-suit demand, or even any pre-suit communication, was had between the parties. At the time of filing, by admission of Plaintiff's predecessor counsel, neither Plaintiff nor her attorneys had any idea what her medical bills were, and Plaintiff's counsel could not even identify her treating providers. Thus, while this case was always identified as a potential removal action, Defendants were aware that additional information was needed in order to meet the amount in controversy requirement of 28 U.S.C. §1332(a). To that end, Defendant FLOOR AND DECOR served initial discovery on the Plaintiff on July 2, 2020.

5. It is also apparent from the proceedings thus far that the Plaintiff has made considerable efforts to delay and avoid providing Defendants the grounds for removal – first, Plaintiff simply failed to respond to discovery by its deadline and without seeking an extension for the same. When Plaintiff did finally respond to discovery, her responses were insufficient, vague[1], and perhaps most importantly, served in such a piecemeal fashion as to frustrate Defendants' ability to fully ascertain the scope of Plaintiff's claims. Plaintiff now seeks to use her own unwillingness to provide full and comprehensive discovery responses as both a sword

---

[1] See Defendant's Motion to Deem Request for Admissions Admitted, to Compel Better Responses, or to Limit Damages at D.E. 1-5.

and a shield, arguing that, at precisely the time she stated that she had "made a reasonable inquiry but the information known or readily obtainable at this time is insufficient to enable her to admit or deny" whether the amount in controversy exceeded $75,000.00, the Defendants should have known and acted on the fact that it was indeed in excess of that amount. [D.E. 1-5.]

6. In a somewhat shocking lack of candor, Plaintiff states in her Motion for Remand that, "Plaintiff served the discovery responses, which are quoted in Defendant's Notice of Removal at D.E. 1, r26 and attached thereto as exhibits, on August 14, 2020, not August 17, 2020, as Defendants represent to the Court."

7. This is not true, or at least not as true as Plaintiff would like this Court to believe.

8. Instead, what Plaintiff served on August 14 were incomplete versions of both her Answers to Interrogatories and Response to Request for Production, sent without the medical records and bills that were either responsive to and/or incorporated by reference as to both sets of discovery responses. It was only after inquiry was made by the undersigned (Exhibit "A") that Plaintiff apologized for the delay and explained that "there was a problem with the scanned files Friday and [Plaintiff's counsel] were shorthanded." Attached as Exhibit "B."





9.      The documents subsequently produced included Plaintiff's up-to-date medical records and bills related to the subject suit. Perhaps most clear from this delayed service effectuated on August 17, 2020 is the fact that Plaintiff *intended* to serve the same along with the paper responses the preceding Friday, but did not do so. These documents were to be made part of Plaintiff's Answers to Interrogatories and Responses to Request for Production. Plaintiff's claim that her discovery responses were served on August 14, 2020, is thus at best misleading.

10.     It is also pertinent that the documents served on Monday, August 17, 2020 were material in establishing amount in controversy and were incorporated by reference in Plaintiff's Answers to Interrogatories, meaning the interrogatories as initially served were incomplete.

11.     In Plaintiff's Answers to Interrogatories pertaining to her injuries, she specifically referenced (and thus incorporated into her answers) her medical records, which would be produced on August 17, 2020:

> **13. Please describe all personal injuries you received in the incident. (In answering this question, specify the part or parts of your head, neck, arms, legs, and body that were injured, and specify whether each part mentioned was broken, sprained, cut, bruised, or otherwise injured.)**

> **ANSWER: I broke the Tibia and Fibula in my right leg – See Doctor notes for more information. I had surgery and Titanium plates / Screws were surgically installed.**

12. Plaintiff was also extremely vague in identifying the amount of her medical bills, admitting that she "[did] not know the total amount of the bills," and that "the hospital visit was *around $59,000*." (Emphasis added.) Thus, it stands that Plaintiff was either intentionally providing an insufficient answer (since she was presumably in possession of the medical bills that would be produced three days later), or simply incorporating those bills by reference in order to avoid what would be an obvious discovery violation for failing to fully answer a simple form interrogatory seeking her amount of damages.

13. This procedure is, of course, explicitly authorized by Fla. R. Civ. P. 1.340(c), which states that:

> **When the answer to an interrogatory may be derived or ascertained from the records (including electronically stored information) of the party to whom the interrogatory is directed…an answer to the interrogatory specifying the records from which the answer may be derived or ascertained and offering to give the party serving the interrogatory a reasonable opportunity to examine, audit, or inspect the records and to make copies, compilations, abstracts, or summaries is a sufficient answer.**

14. Thus, even taken in the light absolutely most favorable to the Plaintiff, her response to Interrogatory No. 13 incorporated those medical records yet to be produced, meaning that Plaintiff had not finalized service of her answers until Monday, August 17, 2020.

15. Plaintiff's Response to Request for Production was even more insufficient to trigger the 30-day deadline to remove to Federal Court as "served" on August 14, 2020:

> **7. Complete hospital records following the incident pertaining to the Plaintiff.**
>
> **RESPONSE:**
> **All medical records in possession are produced. Plaintiff will**

> **supplement upon receipt of additional records.**
>
> **8. All medical bills incurred as a result of the incident which is the subject matter of the litigation.**
>
> **RESPONSE:**
> **All medical bills in possession are produced. Plaintiff will supplement upon receipt of additional responsive documents.**

16. These responses, of course, provide no actual information on which Defendants could rely to determine amount in controversy. And despite what is stated in these responses and alleged in Plaintiff's Motion for Remand, these documents were not produced on August 14. They were produced on August 17, 2020.

17. The first question, then, is whether or not those "other papers" served by Plaintiff on August 14, 2020 triggered the mandatory 30-day removal requirement. Defendants submit that it did not, for two reasons: First, none of the subject discovery responses were complete when served on August 14. "Service" must be determined as the time that the complete "other paper" is served. Allowing a party to serve incomplete discovery responses triggering the 30-day removal requirement, only to complete service of those responses at their leisure, would completely defeat the purpose and spirit of federal removal. As such, this Court should find that Plaintiff's Answers to Interrogatories and Response to Request for Production were both served on August 17, 2020.

18. Second, in situations such as this where the "other paper" does not constitute clear and sufficient grounds for removal on its face, a litigant must be afforded deference to its good-faith determination as to when the amount in controversy requirement has been met. It is perfectly reasonable for Defendants to have determined that Plaintiffs' answers that her hospital stay was "around $59,000" and she has incurred "around 1,500" in out of pocket expenses were not, on their own, sufficient to *require* removal within 30 days, and that subsequent receipt of

those underlying medical records and bills provided sufficient additional information as to justify removal.

19. It is also important to note that there is an inherent difficulty placed upon a Defendant in a case where the Plaintiff has refused to provide a response as to the amount in controversy, which has been discussed before:

> **Adopting a rule which requires speculation as to the removability of an action places the defendant in a quandry: If he estimates that the requisite jurisdictional amount is in controversy and removes, and the plaintiff contests that estimate by motion to remand, the defendant will be required to pay the "just costs" of his error in judgment if the court concludes that removal was improper. 28 U.S.C. s 1447(c). On the other hand, if the defendant estimates that removal is impossible only to have it appear after thirty days have passed that in fact more than the requisite amount was always in controversy, the right of removal would be lost if the court then concludes that removability was apparent from the initial pleadings. See Horak, supra, and Altamil, supra. Neither result is justified or necessary in a case where the plaintiff, if given the opportunity, is capable of stating the amount in controversy**

*Rollwitz v. Burlington N. R. R.*, 507 F. Supp. 582, 589 (D. Mont. 1981).

20. Here, Defendants attempted to have Plaintiff answer whether the amount in controversy requirement was met, and Plaintiff refused [See D.E. 1-5]. Contemporaneous to her refusal to clarify amount in controversy in her Responses to Request for Admissions, Plaintiff served incomplete and vague Answers to Interrogatories and Responses to Request for Production, which were then supplemented the following Monday, on August 17, to include the actual medical records and bills in controversy. These medical bills and records provided the Defendants significant additional information, including but not limited to: certainty as to the actual amounts billed thus far, some proof of causation (or at least the timing and scope of her treatment), greater knowledge regarding Plaintiff's injury, her treatment and her prognosis, which provided a materially different data set upon which Defendant was compelled to assess

removability. Even if this Court were to find that some part of Plaintiff's Answers to Interrogatories and Responses to Request for Production were served, however partially, on August 14, they certainly did not make it clear on their face that the amount in controversy requirement had been met. It is reasonable for Defendants to have determined that it was only receipt of the actual underlying medical records and bills that provided cause to remove under 28 U.S.C. § 1446.

21.     Thus, because Plaintiff is incorrect in her representation to the Court that service of the subject "other paper" was made on August 14, 2020 or, in the alternative, because any partial service made on August 14 was insufficient to trigger the Defendant's 30-day removal requirement absent those additional papers subsequently served on August 17, 2020, Defendants would submit that removal was timely and made 29 days after receipt of those medical records and bills which can be argued to have apprised Defendants of the removability of this matter.

**II.     Orlando Adames was Fraudulently Joined and Must be Dismissed**

22.     Plaintiff's argument regarding the fraudulent joinder of this action are identical to those made in her Response to Motion to Drop Fraudulently Joined Party [D.E. 8], with Defendants offering argument in their Reply thereto [D.E. 14]. Defendants adopt and incorporate these arguments and the cited law.

23.     Here, Plaintiff has sued a store manager not present in the store prior to or at the time of Plaintiff's injury, who has submitted a sworn affidavit attesting to his absence from the store at any time material to Plaintiff's allegations, and certifying that in his position he had no participation or ability to change the planning, selecting, or placing of the floor display over which Plaintiff tripped.

24.     Plaintiff's Motion for Remand makes no novel arguments regarding Mr. Adames'

potential for liability, but does once again attempt to "shift the goalposts" by now claiming that her case is not a trip-and-fall, but rather premised on "a failure to maintain reasonably safe premises...[centered on] the design, selection, placement, maintenance, inspection, and servicing of the display that caused her injuries." [D.E. 16 at p. 8]. This departure from being a standard premises liability "trip-and-fall" case only strengthens the argument that Mr. Adames was fraudulently joined. Mr. Adames has already sworn that he had no say or ability to effect the planning, selecting, or placing of the floor display. There is certainly not any good-faith argument that he designed the display. Moreover, there is no evidentiary rebuttal which would establish why the subject display was suffering from any issues regarding its "maintenance, inspection, and servicing." Instead, Plaintiff repeatedly alleges that the display, *as designed*, allowed Plaintiff to trap her foot underneath, leading to her injuries. Plaintiff's Motion for Remand is conspicuously missing evidence (affidavit or otherwise) setting forth *any* detail whatsoever regarding these issues of maintenance, inspection, and/or servicing, how they caused Plaintiff's fall, and how Mr. Adames could theoretically be liable.

25.     Plaintiff, in apparent support for remand, attaches an unauthenticated and unrelated job posting from FLOOR AND DECOR's website, advertising the position of Store Manager for a different store than the one at issue. Plaintiff alleges that this advertisement for a job, which includes language such as, "at Floor &Decor, Store Managers/CEMs own the box, run the box and get to create the playbook," and "the Store Manager/CEM is responsible for providing strong leadership," somehow serves to set the standard for a duty owed by a store manager. This cannot be considered a "standard," and even if this unrelated job posting were somehow relevant, it is an advertisement seeking to attract qualified applicants to apply for the job. This constitutes advertising "puffery," buzzwords and industry terminology used to attract

sought-after candidates, and by no means meant (or reasonably understandable) as a standard for duty of care owed to the general public. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1319 (11th Cir. 2019).

26. Defendants are entitled to rely on the relevant case and statutory law to determine the standard of care owed by a store manager, and it is this standard which Plaintiff has failed to establish.

27. Plaintiff's cited cases are all either inapplicable or distinguishable. *Marinelli v. Carter*, Case No. 8:19-cv-2041-T-36CPT (Fla. M.D. March 17, 2020) involves an elevator repairman who personally performed work on an elevator's brakes, which later failed. There is no such unrebutted allegation as to the personal involvement of Mr. Adames. *Murray v. Teledyne Continental Motors, Inc.*, Case No. 09-61644CIV-Altonaga/Brown, 2010 WL 62978 (Fla. S.D. January 5, 2010) involves maintenance personnel who actively serviced a plane involved in a plane crash. Once again, Plaintiff's arguments regarding the subject display appear to be that it was improperly designed in such a way to allow a foot to get caught; none of these allegations implicate personal involvement of Mr. Adames. *Hunt v. Target Corp.*, Case No. 14-80266-CIV-MARRA/MATTHEWMAN, 2014 WL 1515262 (S.D. Fla. Apr. 18, 2014) is perhaps most instructive, as it involved a store manager *in the store* at the time of the alleged injury, and specifically contemplated the duty owed *by a manager on duty*, which Mr. Adames was not.

28. Instead, he has been sued solely by virtue of holding a title, and none of the facts testified to in his affidavit have been rebutted by Plaintiff. Where a defendant's sworn statements are undisputed by the plaintiff, the court may not "resolve the facts in the [p]laintiff['s] favor based solely on the unsupported allegations in the [plaintiff['s] complaint." *Id. See also Accordino v. Wal-Mart Stores E., L.P.*, 3:05CV761J32MCR, 2005 WL 3336503, at *3 (M.D.

Fla. Dec. 8, 2005)("In the absence of any proof, the court will not "assume that the nonmoving party could or would prove the necessary facts.")(internal citation and emphasis omitted).

29.     Mr. Adames' unrebutted affidavit, then, must be taken as true. That, combined with the relevant case law, makes clear that absent competently-alleged personal action, a store manager may not face liability. *See Accordino; Kimmons v. IMC Fertilizer, Inc.*, 844 F.Supp. 738, 739, 740 (M.D.Fla.1994); *McElveen v. Peeler*, 544 So.2d 270, 271, 272 (Fla. 1st DCA 1989); *Orlovsky v. Solid Surf, Inc.*, 405 So.2d 1363, 1364 (Fla. 4th DCA 1981), the end result of which is the finding that Mr. Adames was fraudulently joined and should be dismissed.

30.     Upon dismissal of Mr. Adames, Plaintiff's Motion for Remand presumably concedes diversity between Plaintiff and Defendant, FLOOR AND DECOR.

**WHEREFORE**, Defendants, FLOOR AND DECOR OUTLETS OF AMERICA, INC. and ORLANDO ADAMES, respectfully request that this Honorable Court deny Plaintiff's Motion for Remand, grant Defendant's Motion to Drop Fraudulently Joined Party and dismiss ORLANDO ADAMES as a Defendant in this matter, and for such other and further relief as this Court deems just and proper.

### REQUEST FOR HEARING

Pursuant to Rule 7.1(b)(2), Defendants hereby request a hearing on the matter at issue. The issues regarding timing and substance of service of discovery responses, as well as the doctrine of Fraudulent joinder are both highly fact-specific and it is Defendants' opinion that a hearing on the issues would be beneficial to the Court in making its decision.

Dated: October 14, 2020.

Respectfully submitted,

HIGHTOWER, STRATTON, NOVIGROD & KANTOR
330 Clematis Street, Suite 201
West Palm Beach, Florida 33401
Telephone: (561) 833-2022
Facsimile:  (561) 833-2140

By: Joseph A. Cafaro
JOSEPH A. CAFARO, ESQ.
Florida Bar No.:	90942
Primary:	jcafaro@hightowerlaw.net
Secondary:	arosales@hightowerlaw.net
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 14, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day upon the attached service list, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive Notices of Electronic Filing.

        HIGHTOWER, STRATTON, NOVIGROD & KANTOR
        330 Clematis Street, Suite 201
        West Palm Beach, Florida 33401
        Telephone: (561) 833-2022
        Facsimile:  (561) 833-2140

        By: Joseph A. Cafaro
        JOSEPH A. CAFARO, ESQ.
        Florida Bar No.:        90942
        Primary:       jcafaro@hightowerlaw.net
        Secondary:    arosales@hightowerlaw.net
        *Counsel for Defendants*

## SERVICE LIST

**Ginger Featherstone vs. Floor and Decor Outlets of America, Inc. and Orlando Adames**
**United States District Court, Southern District of Florida**
**CASE NO.: 2:20-CV-14323**

P. Alexander Gillen, Esq.
NEWSOME MELTON
201 S. Orange Avenue, Suite 1500
Orlando, FL 32801
gillen@newsomelaw.com;
sucharski@newsomelaw.com;
cardosa@newsomelaw.com
*Counsel for Plaintiff Ginger Featherstone*

Joseph A. Cafaro, Esq.
HIGHTOWER, STRATTON, NOVIGROD & KANTOR
330 Clematis Street, Suite 201
West Palm Beach, Florida 33401
jcafaro@hightowerlaw.net
arosales@hightowerlaw.net
*Counsel for Defendants Floor and Decor Outlets*
*of America, Inc. and Orlando Adames*